

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 21, 2024

**By ECF**
Hon. J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *United States v. Jose Lopez,* 24 Cr. 350 (JPO)

Dear Judge Oetken:

The Government respectfully requests that the Court enter the Government's proposed protective order (the "Protective Order") governing its anticipated discovery productions in this case. *See* Exhibit A. The defendant does not consent to the entry of this order. For the reasons that follow, the Protective Order, which is minimally restrictive and would not hinder the defendant's efforts to defend himself at trial, is appropriate in this case.

"Rules authorizing discovery . . . are a matter of legislative grace." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984); *see also Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 788 (1st Cir. 1988) (noting that the Supreme Court, in evaluating the legality of discovery protective-orders, has "focused on the fact that discovery is a 'matter of legislative grace'"). Rule 16, which governs the discovery at issue here, broadly authorizes the Court to enter a protective order to "deny, restrict, or defer discovery" "[a]t any time," if there is "good cause." Fed. R. Crim. P. 16(d)(1)*; see also In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991) (observing that the language of Rule 16(d)(1) "is . . . permissive," so a district court may "limit or otherwise regulate discovery had pursuant to the Rule"). "[G]ood cause" does not mean unusual or extraordinary cause. Good cause for a protective order exists whenever "'a party shows that disclosure will result in a clearly defined, specific and serious injury'—such as compromising the 'privacy interests of innocent third parties,' causing a risk of harm to law enforcement or others, or 'imped[ing] ongoing [government] investigations.'" *United States v. Jackson*, No. 21 Cr. 537 (LTS), 2022 WL 582700, at *2 (S.D.N.Y. Feb. 25, 2022) (citation omitted). And, importantly, the level of particularity with which good cause must be demonstrated "depends upon the nature or type of protective order at issue." *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012).

"Protective orders come in all shapes and sizes, 'from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific

information after a specific finding of need.'" *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (quoting *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 532 (1st Cir. 1993)). "That is why some courts have found that broad 'blanket' or 'umbrella' protective orders, which cover all materials produced by a party, 'may be entered 'without a particularized showing to support the claim for protection.'" *United States v. McCaughey*, 534 F. Supp. 3d 132, 138 (D.D.C. 2021) (quoting *United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018)).

In sum, the determination is a balancing act, with courts weighing the good cause supporting a requested protective order against the burden that "a protective order would be on [the defendant], being particularly sensitive to the extent to which a protective order would hinder [his] efforts to defend [himself] at trial." *Smith*, 985 F. Supp. 2d at 520. In striking the right balance, courts pay heed to the "pitfalls in allowing unfettered public access to discovery materials," including: (1) "[undermining] the purpose of the discovery rules—to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field"; (2) "the risk that disclosure of some of the discovery materials could taint a trial"; and (3) "because the discovery rules are reciprocal, . . . the risk that unfettered public access could jeopardize a defendant's trial strategy." *Id.* Additionally, some "[c]ourts use protective orders not only to resolve individual discovery disputes, but also to "expedite the flow of discovery.'" *Johnson*, 314 F. Supp. 3d at 252 (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1123 (3d Cir. 1986)). Indeed, Judge Margaret M. Garnett recently approved of a protective order on the grounds that it "[was] properly limited (prohibiting only wide public dissemination) and [was] intended to facilitate the production of more discovery material than is required by Rule 16." *United States v. Moore*, 24 Cr. 250 (MMG) (May 28, 2024), Dkt. No. 19. And when the parties' dispute centers on whether a defendant may *publicly* disseminate material, courts consider the fact that "the use of compulsory process [is] to facilitate orderly preparation for trial, not to educate or titillate the public." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982).

Here, good cause supports the entry of the Government's proposed Protective Order, which is minimally restrictive. The Protective Order provides for two designations. The first designation—"Disclosure Material"—would apply to the vast majority of the materials in this case. For example, the Government anticipates categorizing at least the New York City Police Department's Electronic Case Management System ("ECMS") file and the Bronx District Attorney's Office's case file as Disclosure Material. The Government also proposes in its Protective Order a designation of "Attorney's Eyes Only" ("AEO") for a limited subset of records related to domestic-violence cases or allegations involving the defendant, and which do not directly implicate the defendant's offense conduct in this case, in order to protect the privacy of potential third-party victims. In conducting its balancing inquiry, the Court should consider both the limitations imposed by the proposed Protective Order and the risks of proceeding without one.

The limitations imposed by the proposed Protective Order are minimal: the defense could not post Disclosure Material on the Internet or share Disclosure Material with the media. The defendant could, however, possess any Disclosure Material and use it unencumbered for the purpose of defending this case. In other words, the Protective Order would have no bearing at all on—much less "hinder"—the defendant's "efforts to defend [himself] at trial." *Smith*, 985 F. Supp. 2d at 520. And, if the defendant later desires to publicly post some of the Disclosure Material or to share it with the media, the Protective Order empowers the defendant to move for de-designation

of specific documents if, after meeting and conferring with the Government, a dispute remains concerning those documents. *See McCaughey*, 534 F. Supp. 3d at 140 (granting Government motion for protective order over defense objection where the order permitted the defense to "have access to all information that is subject to the proposed order to use in formulating a defense" and—"most important, [permitted the defense to] seek a modification of the order at any time" (internal quotation marks omitted)).

On the other side of the balance, if the defendant were permitted to publicly disseminate the Disclosure Material without limitation, his production would carry the risk of specific and serious injuries to law enforcement interests. The ECMS records contain law enforcement information—e.g., investigative methods, tools, and techniques—that would jeopardize future law enforcement investigations if disseminated to the public. The ECMS Records include a host of typically non-public information that, if examined, reveals a great deal about the internal workings of the NYPD. The ECMS records, for example, include a detailed timeline of the investigative steps taken in this case, including information obtained from an NYPD database, inquiries as to whether the firearms in this case were lost or stolen, lab reports, and surveillance techniques. A member of the public seeking to avoid detection for a similar crime could trace these steps in an effort to avoid detection by law enforcement.

Some of the discovery material at issue has no relation to the crime charged here. For example, the ECMS records include guidance for officers investigating crimes, in general. It is not difficult to imagine how an enterprising member of the public might comb through the ECMS records to discern law enforcement practices with an eye toward undermining law enforcement efforts or concealing criminal activity. Rule 16 does not require the Government to hand the public a roadmap to a typical NYPD investigation, and the Court should not require the Government to do so. *See Joy*, 692 F.2d at 893 (acknowledging that "the use of compulsory process [is] to facilitate orderly preparation for trial, not to educate or titillate the public").[1]

In sum, the Government's proposed Protective Order strikes the right balance. It guards against the clearly defined, specific, and serious injuries described herein, with no discernible impact on the defendant's ability to prepare a defense. And it preserves the defendant's right to challenge the Government's designation of materials in the event the parties are unable to resolve a dispute without Court intervention.

---

[1] The Government notes that it is not readily apparent whether much of the information contained in the ECMS records and the Bronx District Attorney's Office's case file is subject to the Government's Rule 16 obligations at all. In the absence of a protective order like the one proposed herein, the Government—to protect law enforcement's interests —would have to undertake a more searching review of these records to determine whether they contain information to which the defense is entitled at this stage and redacting any information to which the defense is not entitled. A similar analysis would have to be conducted of body-worm camera footage to protect privacy interests of non-witnesses. Specifically, in at least one instance, body-worn camera footage shows a member of the public interacting with officers at the Bronx precinct in which the defendant was arrested. The Government would prefer, however, to produce the full set of records and videos to the defense—more than the defense is entitled to receive—with the limited protections set forth in the Protective Order. The Government normally does so in cases brought under 18 U.S.C. § 922(g)(1) because defendants in such cases commonly consent to the entry of protective orders like the one the Government seeks here; that is why the Government indicated, at arraignment, that it anticipated being able to produce substantially all Rule 16 discovery in this case within three weeks. This practical approach, in which a limited protective order facilitates broader and swifter discovery, serves the interests of justice. *See Johnson*, 314 F. Supp. 3d at 252 (recognizing courts' use of protective orders to "expedite the flow of discovery").

For the foregoing reasons, good cause supports the entry of the Government's proposed Protective Order.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   s/ Daniel Roque
Daniel K. Roque
Special Assistant United States Attorney
(212) 637-1946

Encl.

cc: Marne Lenox, Esq. (via ECF)

4